```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TENNESSEE
                         WESTERN DIVISION
_____

UNITED STATES OF AMERICA,     )
                              )
     Plaintiff,               )
                              )
v.                            )    No. 17-cr-20378-JTF-tmp
                              )
ROBERT HARDY,                 )
                              )
     Defendant.               )
                              )
_____

                    REPORT AND RECOMMENDATION
_____
```

Before the court by order of reference is defendant Robert Hardy's Motion to Suppress Evidence, filed on April 6, 2018. (ECF No. 20) The government filed its response on April 27, 2018. (ECF No. 24.) On July 24, 2018, Hardy filed a supplement to his motion. (ECF No. 42.) For the following reasons, it is recommended that the Motion to Suppress be denied.

### I.   PROPOSED FINDINGS OF FACT

At the suppression hearing, the court heard testimony from Hardy and Officers Kerry Moody and Chad Gean of the Memphis Police Department. The court also received into evidence several exhibits, including the police body camera audio-video recording of the traffic stop at issue and a recording of a jail phone call that Hardy made after his arrest. Based upon the court's observation of the witnesses as they testified, its subsequent review of the transcript of the hearing, and the police body camera video and

jail phone call recording, the court finds the officers' testimony relating to the circumstances of the traffic stop to be credible and Hardy's testimony to be not credible. Therefore, the following proposed findings of fact are based upon the officers' account of the events.

On June 6, 2017, Memphis Police Department Officer Kerry Moody was conducting routine patrol on the midnight shift when he observed a Nissan Maxima traveling northbound on Bellevue Avenue in Memphis, Tennessee, with a non-functioning tag light. However, Officer Moody was not able to catch up to the vehicle to initiate a traffic stop. Later that evening, Officer Moody spotted the same Maxima with the non-functioning tag light traveling southbound on Bellevue Avenue as he was traveling northbound. Officer Moody made a U-turn and activated his white "takedown" lights to initiate a traffic stop.[1] He observed the vehicle turn into the parking lot of the Bellevue Inn. He followed the Maxima into the parking lot and parked directly behind the vehicle.[2]

After Officer Moody stopped the vehicle, the driver of the Maxima, Priscilla Wright, attempted to exit the vehicle as Hardy

---

[1] Officer Moody inaccurately stated in his affidavit of complaint that he activated his blue lights and siren to initiate the traffic stop. This inaccurate statement does not affect the credibility of Officer Moody's testimony, and the color of the lights used by Officer Moody to initiate the traffic stop has no bearing on the validity of the stop.

[2] Hardy testified that Officer Moody did not actually initiate a traffic stop of the vehicle and that the driver, Priscilla Wright, had just returned from the motel's registration office when Officer Moody pulled in behind their vehicle. The court finds Hardy's

-2-

exited on the passenger's side.  Officer Moody ordered Hardy and Wright to get back into the vehicle.  As Officer Moody approached the passenger's side, he could smell the odor of marijuana coming from the Maxima.  Officer Moody asked Hardy and Wright for their identification and discovered that Wright was driving on a revoked license.  As Officer Moody stood next to Hardy with the passenger door open, he could see a digital scale in the passenger door side pocket "that's commonly used for weighing narcotics."  Officer Moody asked Hardy, "Y'all got any drugs in the car?" and Hardy responded that he had "a blunt" on him.  Officer Moody asked, "When was the last time y'all smoked in the car?" and Wright responded, "It was earlier today."  When Officer Moody stated that he was going to search the car because he could smell marijuana and asked Hardy if he had anything on him, Hardy stated, "I had a little blunt I told you."  Officer Moody removed Hardy from the vehicle, patted him down for officer safety, and placed him in the back of the squad car without handcuffs.

By this time, Officer Chad Gean had arrived on the scene. Upon exiting his squad car, Officer Gean also smelled the odor of marijuana coming from the Maxima.  Officer Gean approached the driver's side of the vehicle with his flashlight and saw a firearm on the floorboard behind the driver's seat.  The officers searched the vehicle, seized a Hi-Point .45 caliber pistol, and found 24 grams of marijuana, 10 pieces of crack cocaine, and ecstasy and

---

testimony to be not credible.

oxycodone pills.

At some point, Hardy knocked on the window of Officer Moody's squad car to get Officer Moody's attention.  When Officer Moody opened the squad car's door, Hardy claimed ownership of everything found in the vehicle:

>Officer Moody: What's up?
>
>Hardy: [inaudible]
>
>Officer Moody: Do what buddy?
>
>[inaudible discussion between Hardy and Officer Moody through squad car window]
>
>Officer Moody: Hold on one second. Hold on one second.
>
>[Officer Moody opens door to squad car]. What did you say?
>
>Hardy: I said I said [inaudible] she was already parked and I was in the front seat but this [inaudible] So I take it man. You know what I am saying?
>
>Officer Moody: So you are telling me what?
>
>Hardy: Whatever y'all found I'm gonna take [inaudible]
>
>Officer Moody: So you are telling me, the gun's yours and the drugs [are] yours?
>
>Hardy: I ain't gonna say the gun man, I was in the front seat but you got the gun the weed from me I'm gonna take it though
>
>Officer Moody: Well that ain't how it works
>
>Hardy: Naw. I am gonna say it's mine. I am gonna say it's mine. [inaudible].
>
>Officer Moody: So you are telling me the gun is yours? And the drugs are yours?
>
>Hardy: Everything mine sir.
>
>Officer Moody: Ok.
>
>Hardy: Yah.

Officer Moody later advised Hardy of his Miranda rights using a rights waiver form, Hardy signed the waiver form, and he provided a statement admitting ownership of the firearm. Hardy was subsequently indicted for possessing drugs with the intent to distribute, being a felon in possession of a firearm, and possessing a firearm in furtherance of a drug trafficking crime, in violation of 21 U.S.C. § 841(a)(1), 18 U.S.C. § 922(g)(1), and 18 U.S.C. § 924(c).

## II.   PROPOSED CONCLUSIONS OF LAW

**A.   The Fourth Amendment**

The Fourth Amendment provides, in part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. "A warrantless search or seizure is 'per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.'" United States v. Roark, 36 F.3d 14, 17 (6th Cir. 1994) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). Hardy argues that the officers violated his Fourth Amendment rights by initiating an unlawful traffic stop. "An ordinary traffic stop by a police officer is a 'seizure' within the meaning of the Fourth Amendment." United States v. Jackson, 682 F.3d 448, 453 (6th Cir. 2012). "Not only the driver of a stopped vehicle, but a passenger as well, is seized within the meaning of the Fourth Amendment and

thus may challenge the legality of the stop."[3] United States v. Campbell, 549 F.3d 364, 371 (6th Cir. 2008).

The court finds that the traffic stop was lawful. Officer Moody credibly testified that he observed the Maxima traveling on Bellevue Avenue on two separate occasions without its tag lights working in violation of Tennessee law, and that was the reason he initiated the traffic stop. See Tennessee Code Annotated § 55-4-110(c)(1) ("Except as provided in subdivision (c)(2), for all motor vehicles that are factory-equipped to illuminate the registration plate, the registration plate shall be illuminated at all times that headlights are illuminated."). Thus, Officer Moody had reasonable suspicion (as well as probable cause) to initiate the stop. United States v. Simpson, 520 F.3d 531, 540 (2008).

Upon exiting his vehicle, Officer Moody smelled the odor of marijuana coming from the Maxima, and shortly thereafter, he observed a digital scale in the passenger door pocket, Wright stated that they had smoked marijuana in the car earlier that day, and Hardy stated that he had a marijuana blunt on him. These facts gave the officer not only reasonable suspicion of additional criminal conduct, but also probable cause to arrest Hardy and conduct a warrantless search of the vehicle. See United States v. Terrell, 483 F. App'x 161, 165 (6th Cir. 2012) ("In fact, this court has noted on various occasions that the odor of drugs in a

---

[3]Hardy does not challenge the search of the vehicle. Because Hardy was a passenger of the vehicle, he lacks standing to contest the search. See Rakas v. Illinois, 439 U.S. 128, 148-49 (1978).

vehicle is sufficient to establish probable cause to search that vehicle."); United States v. Kroger, 152 F. App'x 429, 430-31 (6th Cir. 2005); United States v. Foster, 376 F.3d 577, 586 (6th Cir. 2004); see also United States v. Garza, 10 F.3d 1241, 1246 (6th Cir. 1993) ("[W]e find that Agent Perman's smelling the marijuana . . . constituted probable cause to believe that there was marijuana in the vehicle. Once this probable cause existed, a search warrant was not necessary."). In sum, the officers' encounter with Hardy complied with the Fourth Amendment.

**B.   *Miranda* Challenge**

As articulated by the Supreme Court in Miranda v. Arizona, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."  384 U.S. 436, 444 (1966).  Since Miranda, the Supreme Court has summarized its central principle as follows: "if the police take a suspect into custody and then ask him questions without informing him of [his] rights . . . his responses cannot be introduced into evidence to establish his guilt."  Berkemer v. McCarty, 468 U.S. 420, 428 (1984).

"In determining whether a defendant was subject to custodial interrogation we look to the totality of the circumstances 'to determine how a reasonable man in the suspect's position would have understood the situation.'" United States v. Swanson, 341 F.3d 524,

-7-

528 (6th Cir. 2003) (quoting United States v. Salvo, 133 F.3d 943, 948 (6th Cir. 1998)). "[T]he ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." United States v. Knox, 839 F.2d 285, 291 (6th Cir. 1988) (internal citation and quotation omitted).

Hardy first seeks to suppress his statement that he had "a blunt" on him, which was made in response to Officer Moody's question, "Y'all got any drugs in the car?" The court must determine whether Hardy was formally arrested (or restrained in a similar manner) at that time requiring Officer Moody to advise Hardy of his Miranda rights. "The very nature of a Terry stop means that a detainee is not free to leave during the investigation, yet is not entitled to Miranda rights." Swanson, 341 F.3d at 528 (citing Berkemer, 468 U.S. at 439-41). "[T]he fact that a motorist is not free to leave once he is pulled over as part of a traffic stop is not sufficient to establish custody." United States v. Ghoston, No. 11-20098, 2012 WL 1391967, at *5 (W.D. Tenn. Feb 27, 2012) (Pham, M.J.), adopted by, 2012 WL 1391960 (Mays, J.); see also United States v. Johnson, No. 2:17-cr-20382, 2018 WL 5846348, at *3 (W.D. Tenn. Nov. 8, 2018) (Fowlkes, J.). The court finds that, considering the totality of the circumstances, Hardy was not subject to custodial interrogation because the restraint exercised never reached the level associated with "formal arrest or a coercive context tantamount to custody." Swanson, 341 F.3d at 529

(quoting Salvo, 133 F.3d at 953.)  Upon approaching the vehicle, Officer Moody smelled marijuana coming from the vehicle, saw the digital scales in the passenger door pocket, and then questioned Hardy about whether there were drugs in the vehicle.  While Hardy was not free to leave, as demonstrated in the body camera video recording Officer Moody was not acting in a coercive manner, the scope of the questioning was limited, and the length of the questioning was brief. Id.  Thus, Hardy was not detained in a manner that required Miranda warnings.

Next, Hardy seeks to suppress statements made to Officer Moody in which he admitted ownership of the items found in the vehicle. These statements were made after Hardy had been placed in Officer Moody's squad car but before he was advised of his Miranda rights. Hardy knocked on the window of the squad car at some point during the search of the Maxima to get Officer Moody's attention and then voluntarily told Officer Moody that everything found in the vehicle belonged to him.  The court finds that this was a volunteered statement, was not made in response to any police interrogation, and therefore was not made in violation of Hardy's Fifth Amendment rights. Rhode Island v. Innis, 446 U.S. 291, 300 (1980); see also United States v. Woods, 711 F.3d 737, 741 (6th Cir. 2013) ("[v]olunteered statements of any kind are not barred by the Fifth Amendment") (internal quotation and citation omitted); Tolliver v. Sheets, 594 F.3d 900, 920 (6th Cir. 2010) ("Police may listen to volunteered statements, and need not interrupt a suspect who is

-9-

volunteering information in order to deliver a Miranda warning."). Although Officer Moody later asked, "So you are telling me what?" and "So you are telling me the gun's yours and the drugs [are] yours?", these were permissible follow-up questions to volunteered statements. See Tolliver, 594 F.3d at 921 ("The difference between permissible follow-up questions" to a voluntary statement "and impermissible interrogation clearly turns on whether the police are seeking clarification of something that the suspect has just said, or whether instead the police are seeking to expand the interview"); United States v. Dennis, No. 17-cr-20056, 2017 WL 2332847, at *3 (E.D. Mich. May 30, 2017) (holding that pre-Miranda statements made by defendant while being transported to courthouse were properly characterized as volunteered statements or statements made in response to permissible follow-up questions by officer, where defendant had volunteered that William Jr. had been killed by a man named "Kenny" and his subsequent statements were made in response to officer's attempt to clarify volunteered statement).

Finally, Hardy seeks to suppress his signed statement in which he admitted ownership of the firearm. This argument is without merit. This statement was made after Officer Moody had advised Hardy of his Miranda rights and after he knowingly and voluntarily waived those rights. In sum, none of Hardy's statements were made in violation of his Fifth Amendment rights.

### III. RECOMMENDATION

For the above reasons, it is recommended that Hardy's Motion

to Suppress Evidence be denied.

    Respectfully submitted,

                                         s/ Tu M. Pham
                                         TU M. PHAM
                                         United States Magistrate Judge

                                         November 21, 2018
                                         Date

                                                  **NOTICE**

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C).  FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**